**FILED**
CLERK, U.S. DISTRICT COURT

4/5/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JB_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No.  2:21-cr-00165-SB |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| SAED ISMAIL AMIRI, aka "Adnan Herat," | |
| Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant SAED ISMAIL AMIRI, also known as "Adnan Herat," was the owner or senior consultant of Assist Consultants Incorporated ("ACI"), an Afghan company that had received United States-funded contracts since 2013.  Defendant AMIRI was the primary decisionmaker on behalf of ACI.

2.   In connection with the United States' effort to reconstruct and assist Afghanistan and its people, the United States Agency for International Development ("USAID") provided the national power utility of Afghanistan, Da' Afghanistan Breshna Sherkat ("DABS"),

1  with financial assistance to expand Afghanistan's electric grid.

2  USAID was a U.S. government agency funded by U.S. taxpayers and

3  headquartered in Washington, D.C.

4       3.   In or around January 2015, USAID authorized DABS to solicit

5  bids on a U.S.-funded contract to design and construct five electric

6  power substations to connect Afghanistan's Northeastern and

7  Southeastern electric grid systems (the project to be constructed is

8  hereinafter referred to as "NEPS/SEPS").  In or around February 2015,

9  DABS issued a Letter of Invitation ("LOI") in which it stated that it

10 had received USAID funding to build the electric power substations,

11 and solicited competitive bids on the contract.  The LOI sought bids

12 only from companies that had substantial prior experience building

13 electric power substations. Specifically, the LOI criteria required

14 bidders, such as ACI, to have previously worked on two electric

15 substations of 220 kilovolts or more.

16 B.   THE SCHEME TO DEFRAUD

17      4.   Beginning no later than in or around 2015, and continuing

18 through at least on or about May 3, 2016, in Los Angeles and Orange

19 Counties, within the Central District of California, and elsewhere,

20 defendant AMIRI, knowingly and with the intent to defraud, devised,

21 participated in, and executed a scheme to defraud DABS as to material

22 matters, and to obtain money and property by means of material false

23 and fraudulent pretenses, representations, promises, and the

24 concealment of material facts.

25 C.   THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

26      5.   The scheme to defraud operated, in substance, in the

27 following manner:

28

a.   In 2015 and 2016, defendant AMIRI, ACI employees, and other co-schemers sought to obtain the NEPS/SEPS contract by submitting a false work history and false and fraudulent supporting documents in an effort to trick and deceive DABS into believing that ACI met the criterion of having previously worked on two 220 kilovolt substations, and to deprive DABS of money and property by means of those deceptions.

b.   Defendant AMIRI and ACI employees created fake companies and false and fraudulent supporting documents, including documents bearing false logos, such as false certificates of completion; misrepresented the contents of photographs; and registered domain names to give the impression that the fake companies and ACI's claimed prior work experience were real. Defendant AMIRI closely supervised the preparation of several of the false and fraudulent documents related to the fake companies and their purported but in fact non-existent contracts with ACI.

c.   With defendant AMIRI's knowledge, the participants in the scheme caused ACI to submit a bid of approximately $112,292,241 to DABS for the NEPS/SEPS electric power substation contract.  ACI underbid its competitors by more than $20 million.  The ACI bid falsely stated that ACI had worked as a subcontractor for Electra Professional Solutions ("EPS"), a fictitious company ACI controlled, and falsely stated that ACI had built electric power substations for the Suruma Cement Factory in Uganda and the Ekekwe Textile Company in Nigeria.  In fact, as defendant AMIRI and his co-schemers then knew, ACI had never constructed or assisted in the construction of an electric power substation as a prime contractor or subcontractor in

1   Africa at the time ACI stated and represented as part of its bid for

2   the NEPS/SEPS contract that it had.

3          d.   After DABS observed indicators of fraud in ACI's bid

4   for the NEPS/SEPS contract related to the voltage capacity in the

5   Ugandan project described in the work history that ACI included in

6   its bid, DABS began seeking corroboration of ACI's work experience

7   with electric power substations in Uganda and Nigeria. DABS contacted

8   EPS at the address that the participants in the scheme listed and

9   caused to be listed in ACI's bid, which address ACI then controlled.

10  DABS also contacted ACI and requested that ACI provide contact

11  information and supporting documents to further verify the work

12  history set forth in the bid, including a letter from the Ugandan

13  national power utility to validate the work on the Suruma project in

14  Uganda that the participants in the scheme claimed that ACI had

15  performed.

16         e.   In response to these requests, defendant AMIRI

17  directed his co-schemers to obtain false and fraudulent documents

18  from Uganda and Nigeria to provide to DABS.

19         f.   Defendant AMIRI emailed DABS a series of documents he

20  then knew to be false, altered, and deceptive, consisting of: ACI's

21  purported subcontract to work on the Ugandan substation; coordinates

22  of the substation; photographs of the substation; false bank records;

23  and a fraudulent letter that purported to be from a Ugandan

24  government official.  At the time that defendant AMIRI emailed these

25  false and fraudulent documents to DABS, the documents were material

26  to DABS' decision whether to award the electric power substation

27  contract to ACI in connection with the approximately $112,292,241 bid

28  for the NEPS/SEPS contract.

4

D.    THE USE OF THE WIRES

6.    On or about February 29, 2016, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant AMIRI caused the transmission by means of wire communication in interstate and foreign commerce of an email from the Central District of California to co-schemers who were outside the State of California, advising his co-schemers that, "We need to send [an ACI employee] to both Niger and Uganda."

1          FORFEITURE ALLEGATION

2       [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       7.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of the conviction of defendant

8  SAED ISMAIL AMIRI, also known as "Adnan Herat," of the offense set

9  forth in this single-count Information.

10      8.    Defendant AMIRI, if so convicted, shall forfeit to the

11 United States of America the following:

12          (a)   All right, title, and interest in any and all

13 property, real or personal, constituting, or derived from, any

14 proceeds traceable to the offense; and

15          (b)   To the extent such property is not available for

16 forfeiture, a sum of money equal to the total value of the property

17 described in subparagraph (a).

18      3.    Pursuant to Title 21, United States Code, Section 853(p),

19 as incorporated by Title 28, United States Code, Section 2461(c),

20 defendant AMIRI, if so convicted, shall forfeit substitute property,

21 up to the value of the property described in the preceding paragraph

22 if, as the result of any act or omission of defendant AMIRI, the

23 property described in the preceding paragraph or any portion thereof

24 (a) cannot be located upon the exercise of due diligence; (b) has

25 been transferred, sold to, or deposited with a third party; (c) has

26 //

27 //

28 //

1   been placed beyond the jurisdiction of the court; (d) has been

2   substantially diminished in value; or (e) has been commingled with

3   other property that cannot be divided without difficulty.

4

5   DANIEL KAHN                          TRACY WILKISON
    Acting Chief, Fraud Section          Acting United States Attorney
6   Criminal Division
    U.S. Department of Justice
7                                        *Scott M. Garringer*
                                         *Deputy Chief, Criminal Division For:*
8   MATT KAHN                            BRANDON D. FOX
    Trial Attorney, Fraud Section        Assistant United States Attorney
9   Criminal Division                    Chief, Criminal Division
    U.S. Department of Justice
10                                       RANEE A. KATZENSTEIN
                                         Assistant United States Attorney
11                                       Chief, Major Frauds Section

12                                       MONICA TAIT
                                         Assistant United States Attorney
13                                       Deputy Chief, Major Frauds Section

14                                       JEFF MITCHELL
                                         Assistant United States Attorney
15                                       Major Frauds Section

16

17

18

19

20

21

22

23

24

25

26

27

28