1  KENDALL BRILL & KELLY LLP
   Jeffrey H. Rutherford (181695)
2    *jrutherford@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
3  Los Angeles, California 90067
   Telephone: 310.556.2723
4  Facsimile:  310.556.2705

5  NICHOLS LIU, LLP
   Richard L. Beizer (*pro hac vice*)
6    *rbeizer@nicholsliu.com*
   700 Sixth Street, NW, Suite 430
7  Washington, DC  20001
   Telephone: 202.846.9800

8
   Attorneys for Defendant
9  Saed Ismail Amiri

10

11

12                **UNITED STATES DISTRICT COURT**

13         **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15  UNITED STATES OF AMERICA          Case No. 2:21-cr-00165-1-SB

16              Plaintiff,
                                      **DEFENDANT SAED ISMAIL**
17      v.                            **AMIRI'S SENTENCING**
                                      **MEMORANDUM**
18  SAED ISMAIL AMIRI
                                      Judge:  Hon. Stanley Blumenfeld, Jr.
19              Defendant.            Date:   September 14, 2021
                                      Time:   8:00 a.m.
20                                    Ctrm:   6C

21

22

23              **REDACTED VERSION OF DOCUMENT**

24            **PROPOSED TO BE FILED UNDER SEAL**

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

1

2          Defendant Saed Ismail Amiri, by and through his counsel of record, hereby

3    respectfully submits his position regarding sentencing.

4

5    DATED:  August 31, 2021          KENDALL BRILL & KELLY LLP

6

7                                     By:      /s/

8                                          Jeffrey H. Rutherford
                                          *Attorneys for Defendant*
9                                          *Saed Ismail Amiri*

10   DATED:  August 31, 2021          NICHOLS LIU, LLP

11

12                                    By:      /s/

13                                          Richard L. Beizer
                                          *Attorneys for Defendant*
14                                          *Saed Ismail Amiri*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ........................................................ 2

II.  PROCEDURAL HISTORY ........................................................... 3

    A.  THE PLEA AGREEMENT .................................................... 3

    B.  THE PSR AND THE USPO'S RECOMMENDATION LETTER ........ 4

    C.  MODIFICATIONS TO CONDITIONS OF PROBATION ................. 5

III.  LEGAL STANDARDS ............................................................... 7

IV.  SENTENCING FACTORS .......................................................... 8

    A.  NATURE AND CIRCUMSTANCES OF THE OFFENSE................. 8

        1.  No Loss Wire Fraud Case ......................................... 8

        2.  Acceptance of Responsibility and Easing Court Burdens........... 9

    B.  MR. AMIRI'S HISTORY AND CHARACTERISTICS .................. 10

        1.  Aberrant Behavior/Lack of Criminal History............................ 11

        2.  History of Assistance to the U.S. Government.......................... 12

        3.  Personal Consequences of Mr. Amiri's Wrongdoing.................. 14

        4.  Amenability to Supervision ........................................ 17

        5.  Mr. Amiri's Charity and Good Works................................ 18

        6.  Mr. Amiri's Employment Record................................... 19

        7.  Mr. Amiri's Survival of Trauma and Abuse ........................ 19

V.  THE PURPOSES OF SENTENCING ............................................. 20

    A.  SERIOUSNESS OF OFFENSE, RESPECT FOR LAW, JUST PUNISHMENT ...................................................... 20

    B.  DETERRENCE.............................................................. 22

    C.  PROTECTION OF PUBLIC .............................................. 22

VI.  AVAILABLE SENTENCES ....................................................... 23

VII.  NEED TO AVOID UNWARRANTED DISPARITIES ............................ 24

VIII.  CONCLUSION .................................................................... 25

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Gall v. United States,*
   552 U.S. 38 (2007) .............................................................................................7

6

7

*Kimbrough v. United States,*
   552 U.S. 85 (2007) .............................................................................................7

8

9

*Nelson v. United States,*
   555 U.S. 350 (2009) ...........................................................................................7

10

11

*Pepper v. United States,*
   562 U.S. 476 (2011) ...........................................................................................7

12

13

*United States v. Autery,*
   555 F.3d 864 (9th Cir. 2009) ............................................................................12

14

15

*United States v. Chase,*
   560 F.3d 828 (8th Cir. 2009) ............................................................................12

16

*United States v. Jones,*
   158 F.3d 492 (10th Cir. 1998) ..........................................................................19

17

18

*United States v. Vonner,*
   516 F.3d 382 (6th Cir. 2008) ..............................................................................7

19

20

*United States v. Whitehead,*
   532 F.3d 991 (9th Cir. 2008) ..............................................................................7

21

**Statutes**

22

18 U.S.C. § 1343...............................................................................................2, 3

23

18 U.S.C. § 3553(a) ....................................................................................4, 5, 7

24

25

18 U.S.C. § 3553(a)(1)-(7) ...................................................................................7

26

18 U.S.C. § 3553(a)(2) ........................................................................................20

27

18 U.S.C. § 3553(a)(2)(A) ..................................................................................23

28

18 U.S.C. § 3553(a)(2)(A)-(D) ...........................................................................20

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                                         ii

18 U.S.C. § 3553(a)(2)(C) ............................................................................... 23

18 U.S.C. §3553(a)(2)(D) ............................................................................... 22

18 U.S.C. §  3553(a)(3) ................................................................................... 23

18 U.S.C. § 3553(a)(4)-(5) ................................................................................ 7

18 U.S.C. § 3553(a)(6) ............................................................................. 10, 24

18 USC § 3013(a)(2)(A) ................................................................................... 2

U.S.S.G. § 5C1.1 ........................................................................................... 23

U.S.S.G. § 5E1.2(c)(3) ..................................................................................... 5

U.S.S.G. § 5K2.20 .......................................................................................... 11

U.S.S.G. § 5K2.20(b) ...................................................................................... 11

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

iii

**DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM**

*I decided that if one day I can reach a position, I will follow [Mr. Amiri's] path. He does not humiliate us by doing any advertisement about his generosity, the act that many others are doing when they are helping people, either it is for their business advertisement or their political goals and wil[l] ask all the medias whenever they want to help people in need, but Mr. Amiri is doing many philanthropical activities without seeking any credit.*

*See* Ex. C-1 (Rodaba Noori Letter)

*Ismail is more than one person. Children, widows, the disabled, and students are all looking forward to Ismail. Ismail does not only live for himself, he lives with the people and for all the people. When Ismail got away from the terrorist attack (the attack was on an Afghan National Army bus in front of the Herat Airport gate), he told me he may have been killed in that explosion, but God allowed him to live again and now he has the obligation to serve all human beings.*[1]

*See* Ex. C-3 (Saed Abdul Wahid Qattali Letter)

*Ismail has garnered frequent appreciation from US government agencies he worked with by delivering projects in difficult places on time and on budget. So his current case is frustrating to everyone and remains in our minds as a highly unusual exception to his proven history of integrity and partnership . . . I beseech you to consider that his conduct that led to this case was a single, terrible exception to the*

---

[1]    Photographs of the aftermath of the attack, referenced by Mr. Quattali in his letter, as well as emails by U.S. authorities discussing the attack, are attached for the Court's reference at Ex. I.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

1

1    *kind, generous, honest, and thoughtful behavior that I and many others*

2    *have seen from Ismail over many years.*

3                                    *See* Ex. C-4 (William Semmes Letter)

4

5    **I.    PRELIMINARY STATEMENT**

6        Saed Ismail Amiri comes before the Court for sentencing on his guilty plea to

7    a one-count information charging him with wire fraud in violation of 18 U.S.C. §

8    1343.  For the reasons that follow, we respectfully ask the Court to impose the

9    following sentence:

10            • A one-year term of probation with appropriate conditions;

11            • A fine of $55,000, as recommended by the United States

12              Probation Office ("USPO"); and,

13            • A Special Assessment of $100, as required by 18 U.S.C. §

14              3013(a)(2)(A).

15        Mr. Amiri is deeply ashamed and truly remorseful for his conduct.[2]  He takes

16    full responsibility for his actions and makes plain that no one else should be blamed

17    for the conduct at issue in this case, including his former employees and contractors,

18    who, among other things, carried out his instructions to create documents that

19    falsely supported the claim that his former company, Assist Consultants, Inc.

20    ("ACI"), had made in its 2015 bid to win an Afghan government construction

21    contract—namely, that ACI had performed similar electric power substation

22    construction in Africa.

23        We respectfully ask this Court, in urging it to impose the non-custodial

24    sentence set forth above, to consider the full measure of the man, much of which is

25    so meaningfully expressed both in the many letters of support that are attached to

26    this memorandum and in the USPO's Presentence Investigation Report ("PSR").

27    _____

28        [2]    *See* Ex. A (Saed Ismail Amiri Letter).

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                    2
                   DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1  *See* Ex. B (Nilufar Jami, wife of Mr. Amiri, Letter); Exs. C-1 through C-51 (Letters

2  of Support); Dkt. No. 43 (PSR) ¶¶ 71-92, 121.

3       It is an anomaly that Mr. Amiri finds himself before this Court for sentencing

4  in a federal criminal case.  As attested to by the letters of support, Mr. Amiri's

5  personal and professional life is filled with examples of honest and fair dealing;

6  developing and implementing innovative and creative solutions for social problems

7  that have beset Afghanistan; and, perhaps most importantly, love and concern for so

8  many of his fellow citizens, especially the poor, in his war-torn native land.  This

9  case is, for Mr. Amiri, a complete aberration from an otherwise law-abiding life.

10      Mr. Amiri's sincere remorse; his acceptance of responsibility for his actions;

11  his timely entry of his guilty plea; his many philanthropic endeavors, both large and

12  small; and his years of assistance to the U.S. government, which he provided despite

13  the danger to his person that such assistance might engender; both singularly and

14  collectively support the sentence we request.  So too does the unique personal

15  suffering Mr. Amiri has endured and continues to endure as a consequence of his

16  wrongdoing during the pendency of the government's investigation and the duration

17  of this case.

18  **II.    PROCEDURAL HISTORY**

19       **A.    THE PLEA AGREEMENT**

20      Mr. Amiri entered into pre-indictment discussions with the government that

21  culminated in a negotiated disposition: namely a Plea Agreement, a Waiver of

22  Indictment, and an agreed upon Statement of Facts, *see* Dkt. Nos. 33, 36 (Plea

23  Agreement, Statement of Facts, and Waiver of Indictment).  Mr. Amiri then entered

24  a plea of guilty to an Information charging him with a single count of wire fraud, in

25  violation of 18 U.S.C. § 1343.  *See* Dkt. Nos. 28, 37 (Information and Change of

26  Plea Hearing).

27      In the Plea Agreement, the parties stipulate to the Guidelines as follows:

28  Base Offense Level = +7

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

3

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1    Substantial Part of Offense Committed from Outside the Unites States = +5

2    Leadership Role = +4

3    Acceptance of Responsibility = -3

4    Total Offense Level = 13

5    Dkt. No. 33 (Plea Agreement) ¶ 12.  The parties also stipulate that no further offense

6    characteristics, adjustments, or departures apply.  *Id*.

7        The parties each reserve their right to argue for the application of a *Booker*

8    variance, pursuant to 18 U.S.C. § 3553(a).  Among other grounds for a downward

9    *Booker* variance, Mr. Amiri specifically reserves the right to argue for a 2-level

10   decrease in recognition of Mr. Amiri's early acceptance of responsibility and his

11   willingness to lessen the burden on the court system caused by the COVID

12   pandemic by agreeing to appear by video teleconference ("VTC").  *Id.* ¶ 14.  This is

13   colloquially known as the "COVID variance."[3]

14   **B.      THE PSR AND THE USPO'S RECOMMENDATION LETTER**

15       On July 6, 2021, the USPO filed the PSR and its sentencing recommendation

16   ("Recommendation Letter").  *See* Dkt. Nos. 43 (PSR) and 42 (Recommendation

17   Letter).  Consistent with Mr. Amiri's Plea Agreement, the PSR finds a Total Offense

18   Level of 13 after Acceptance of Responsibility.  The PSR confirms that Mr. Amiri is

19   in Criminal History Category I with an advisory Guidelines range of 12-18 months

20   (Zone C).  Dkt. No. 43 (PSR) at Part B (Defendant's Criminal History).

21       The USPO recommends a downward *Booker* variance to a sentence of one

22   _____

23   [3]      Mr. Amiri requests that the Court apply this 2-level downward

24   "COVID variance," which is addressed in more detail below.  In the event that the
     Court grants Mr. Amiri's request, his Total Offense Level will be 11, within Zone B,

25   *before consideration* of other factors that support a downward *Booker* variance, such

26   as those factors that the USPO set forth in its Recommendation Letter and those that
     we set forth in this memorandum.  *After application* of those factors, Mr. Amiri's

27   Total Offense Level would be in Zone A, at Level 9 or below.

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

4

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

year of probation, with a condition that Mr. Amiri participate for 8 months in a Location Monitoring Program without schedule restrictions, a fine of $55,000,[4] and a Special Assessment of $100.  Dkt. No. 42 (Recommendation Letter) at 6.  This recommendation is based on a balancing of the nature and circumstances of the offense and the history and characteristics of Mr. Amiri.  *Id.* at 3-6.  As the USPO states: "Notwithstanding the seriousness of the offense, a non-custodial sentence will provide just punishment and promote Amiri's respect for the law."  *Id.* at 6.

The USPO's recommendation results from its assessment of the following factors, among others:

- Mr. Amiri has "otherwise been a lawful member of society with no prior contact with the criminal justice system,"

- Mr. Amiri "will [not] risk his freedom again by engaging in similar conduct in the future," and

- Mr. Amiri, while on probation, "can be monitored in the community to ensure that he is continuing to lead a productive life and deterred from further criminal conduct."

*Id.*

On these bases, the USPO finds that a non-custodial sentence of probation with Location Monitoring with no schedule restrictions and a fine of $55,000 "is sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)."  *Id.*

## C.   MODIFICATIONS TO CONDITIONS OF PROBATION

The USPO makes a number of recommendations for conditions of Mr. Amiri's probation. Should the Court impose a sentence of probation, we respectfully

---

[4]   A fine of $55,000 is at the high-end of Zone C, pursuant to U.S.S.G. § 5E1.2(c)(3) (maximum fine for Offense Level 12-13 is $55,000).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                                    5

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1  request that the Court modify some of the conditions that the USPO recommended.

2  We address them in turn:

3          **Recommendation Letter at 1, 2, 3, and 7 (Conditions 1 and 8):**

4          In Condition 1, the Recommendation Letter recommends that Mr. Amiri

5  comply with Second Amended General Order 20-04, including Section III—

6  Conditions of Probation and Supervised Release Pertaining to Financial Sanctions.

7          In Condition 8, the Recommendation Letter recommends that Mr. Amiri

8  apply all monies received from certain sources to satisfy his financial obligations.

9          These terms and conditions are recommended because Mr. Amiri's sentence

10  will likely include both a fine and the Special Assessment.

11          Assuming that a fine and Special Assessment are ordered by the Court and are

12  in line with the USPO's recommendation—namely, a $55,000 fine and $100 Special

13  Assessment—Mr. Amiri intends to make payment within 15 days of sentencing.  As

14  such, we request that the Court modify Mr. Amiri's conditions of probation to

15  provide that he will be relieved of the financial reporting and disclosure conditions,

16  set forth in Condition 1 (Second Amended General Order 20-04, Section III) and

17  Condition 8, upon full payment of any fine and the Special Assessment.

18          **Recommendation Letter at 2 (Condition 2):**

19          Condition 2 recommends that Mr. Amiri participate in the Location

20  Monitoring Program for 8 months with no schedule restrictions as a condition of his

21  probation under Zone B of the Guidelines.

22          Given that we are requesting a downward *Booker* variance to Zone A, rather

23  than Zone B, of the Guidelines, we request that the Court consider a term of

24  probation without participation in the Location Monitoring Program or less than 8

25  months of participation in the Location Monitoring Program, which the Court is able

26  to do in Zone A.  To the extent that the Court does not vary downward to Zone A,

27  but instead imposes the sentence recommended by the USPO, we do not object to

28  this condition.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

6

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1    **III.    LEGAL STANDARDS**

2            A court should "impose a sentence sufficient, but not greater than necessary,

3    to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a); *see Kimbrough v.*

4    *United States*, 552 U.S. 85, 101 (2007) (describing this language as the statute's

5    "overarching provision").  With that in mind, a court considers the factors set forth

6    in 18 U.S.C. § 3553(a)(1)-(7).  The Guidelines are the "starting point and initial

7    benchmark" of the sentencing process.[5]  *Gall v. United States*, 552 U.S. 38, 39

8    (2007).  While a court is required to take account of the Guidelines, it may not

9    presume that the Guidelines range is reasonable.  *Nelson v. United States*, 555 U.S.

10   350, 352 (2009) (*per curiam*) (stating "[t]he Guidelines are not only *not mandatory*

11   on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in

12   original).

13           Instead, a court must calculate the Guidelines range and then consider what

14   sentence is appropriate in light of the other sentencing factors set forth in 18 U.S.C.

15   § 3553(a) and its "overarching provision."  A court's sentencing determination must

16   be individualized, based on the particular facts presented in a defendant's case.

17   *See Pepper v. United States*, 562 U.S. 476, 487 (2011); *see also United States v.*

18   *Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (*per curiam)* (holding there was no

19   abuse of discretion where the district court determined that a non-custodial sentence

20   was "more appropriate than prison" despite a Guidelines range of imprisonment for

21   41-51 months and citing with approval *United States v. Vonner,* 516 F.3d 382, 392

22   (6th Cir. 2008) (*en banc*) for the statement that *Booker* "breathed life into the

23   authority of district court judges to engage in individualized sentencing").

24           We submit that a sentence of one year of probation with appropriate

25   conditions, a fine of $55,000, and the $100 Special Assessment is sufficient, but not

26

27           [5]       The advisory Guidelines and their policy statements are among these

28   sentencing factors.  *See* 18 U.S.C. § 3553(a)(4)-(5).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

7

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

greater than necessary, to achieve the purposes of sentencing in light of the many
mitigating factors unique to Mr. Amiri, discussed below.

## IV.   SENTENCING FACTORS

### A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

#### 1.   No Loss Wire Fraud Case

Mr. Amiri pled guilty to a single count of wire fraud in connection with his
involvement in a scheme relating to a July 2015 bid made to Afghanistan's power
authority, Da Afghanistan Breshna Sherkat ("DABS"), to obtain a contract to
construct electric power substations in Afghanistan.[6]  Mr. Amiri's company, ACI,
was fully prepared to perform on the contract.  However, in its bid, ACI submitted
information that falsely stated that it had performed two similar contracts in Africa.[7]
Later, after questions were raised by DABS, documents that falsely supported the
claim of similar past performance were created and submitted to DABS at the
direction of Mr. Amiri.  The conduct underlying Mr. Amiri's offense is detailed in
the Statement of Facts that supports the Plea Agreement, as well as in the PSR.  *See*
Dkt. No. 33, Ex. B (Statement of Facts Supporting Plea Agreement); PSR at Part A
(The Offense).

Significantly, the crime resulted in no loss—either to the Afghan government,
which offered the contract, or to the U.S. government, which was to fund the
contract through the U.S. Agency for International Development ("USAID").  *See*
Dkt. No. 33 (Plea Agreement).  In addition, Mr. Amiri withdrew ACI's bid well

---

[6]      The events relating to Mr. Amiri's offense took place under the
previous Afghan administration of President Ashraf Ghani, which has since been
overthrown by the Taliban.  It is unclear what will happen to institutions such as
DABS or to the progress that has been made over the last two decades to modernize
Afghanistan.

[7]      The false information was contained on four pages of ACI's 1573
Technical Proposal.

1  before the contract was awarded.[8]  *See* Dkt. No. 33, Ex. B (Statement of Facts

2  Supporting Plea Agreement) ¶ 20 (stating that Mr. Amiri withdrew ACI's bid).

3       As a consequence of that withdrawal, neither Mr. Amiri nor ACI profited

4  from this crime.  The only entity to suffer a loss was ACI, itself, which was required

5  to forfeit the $1.7 million bid guarantee that Mr. Amiri had posted and which was

6  later debarred by the Afghan procurement authorities from receiving Afghan

7  government contracts.[9]

8          **2.**   **Acceptance of Responsibility and Easing Court Burdens**

9       In the Central District of California, in order to reflect a defendant's early

10  acceptance of responsibility and willingness to ease the burdens on the court system

11  during the unprecedented COVID pandemic, parties in criminal cases have

12  stipulated, where appropriate, to the application of a 2-level downward *Booker*

13  variance.  *Cf.* Dkt. No. 33 (Plea Agreement) ¶ 14 (stating Mr. Amiri reserved the

14  right to argue for this variance and the government reserved the right to oppose it).

15       Mr. Amiri has met most of the requirements of the COVID variance that has

16  been applied in this District and was willing to meet the only remaining

17  one.  Specifically, he accepted responsibility and entered into a pre-indictment

18  disposition with the government, he appeared at his post-indictment arraignment by

19  VTC, he waived his right to be present at his change of plea hearing, electing to

20  proceed by VTC, and did, in fact, enter his change of plea by VTC.  *See* Dkt. Nos. 8,

21  33, 34, 35, 37.  He was prepared to waive his right to be present at sentencing and to

22

23       [8]     Mr. Amiri's withdrawal of ACI's bid in May 2016 occurred almost 10

24  months before DABS received final approval to award the contract to China Electric
    Energy Group.

25  [9]     As demonstrated by, among other things, its successful completion of over
    $263 million of U.S. government contracts, *see* Dkt. No. 43 (PSR) at ¶ 9, ACI had

26  the capacity to perform the contract and was deemed qualified to perform the work

27  when USAID re-offered it in 2018; *see also* Exs. F-5 and F-6 (examples of U.S.

28  Army Corps of Engineers documents regarding ACI contract performance).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                         9
DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1   proceed by VTC, but understands that the Court is now only allowing VTC

2   appearances with a showing of good cause (as circumstances have changed with

3   respect to the need for parties to appear by VTC). Mr. Amiri has also agreed to an

4   appropriate waiver of appellate and post-conviction collateral attack rights as set

5   forth in his Plea Agreement. Dkt. No. 33 (Plea Agreement) ¶¶ 17-19.

6        The absence of a stipulation by the parties to this 2-level downward "COVID

7   variance" does not impact this Court's ability to adopt that variance.[10] Together

8   with the 2-level downward *Booker* variance recommended by the USPO, the

9   resulting Guidelines calculation would put Mr. Amiri in Zone A.

10       **B.   MR. AMIRI'S HISTORY AND CHARACTERISTICS**

11       Numerous aspects of Mr. Amiri's history and characteristics support the

12  sentence we are requesting. For one, the PSR contains an overview of his history

13  and those characteristics. *See* Dkt. No. 43 (PSR) ¶¶ 71-92, 121. The information in

14  the PSR is both detailed and verified and, to the extent possible, will not be repeated

15  here.

16       In addition, we have submitted letters of support, including those from Mr.

17  Amiri's wife, his family, friends and colleagues, and prominent members of the

18  Afghan community, including apparently now-former government officials. These

19  letters also serve to describe the person who Mr. Amiri is—generous, humble, hard-

20  working, visionary, committed to improving conditions in his home country of

21  Afghanistan, particularly in terms of education, infrastructure, and the arts, and

22  committed to assisting the U.S. in its nation-building efforts there. *See* Exs. C-1

---

24       [10]   We do not know the frequency with which District Courts in this

25  District, or this Court in particular, have applied the "COVID variance."

26  Nevertheless, the application of the 2-level downward "COVID variance" may
    allow the Court to avoid unwarranted sentencing disparities among similarly

27  situated defendants, which is a factor for the Court to consider under 18 U.S.C. §
    3553(a)(6). The need to avoid unwarranted sentencing disparities is discussed in

28  more detail below.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

10

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1  through C-51 (Letters of Support).

2  ### 1.   Aberrant Behavior/Lack of Criminal History

3  Mr. Amiri is 38 years old.  Aside from the instant offense, Mr. Amiri has had

4  no involvement in the criminal justice system.  He has never been convicted of any

5  other crimes—not in the United States, nor in any of the countries where he lived

6  before he arrived in the United States.  Other than in connection with the instant

7  offense, he has never been arrested.  He comes from a strong and supportive family

8  and has a long track record of stable employment and assistance to the U.S.

9  government.  In fact, his good character and work with the U.S. government were

10  factors noted in his application for his Special Immigrant Visa ("SIV") on which he

11  came to the United States in October 2015.  *See, e.g.,* Exs. F-2 and F-3 (█████

12  █████ and ███████████████ Letters, respectively).  Mr. Amiri's character and

13  work with the U.S. government are factors that support our request for a non-

14  custodial probationary sentence.

15  And while Mr. Amiri's conduct might not fit neatly into the Guidelines

16  departure for aberrant behavior under U.S.S.G. § 5K2.20, because the conduct

17  underlying his crime involved "significant planning" and was not of "limited

18  duration," as those terms are defined in the Guidelines, it nevertheless is similar to

19  such a downward departure, as it constitutes a "marked deviation" from an

20  "otherwise law-abiding life."[11]  *See* U.S.S.G. § 5K2.20(b) and Application Notes 2

21  and 3 (setting forth the factors for the application of the Aberrant Behavior

22  departure).  As such, the aberrant nature of Mr. Amiri's conduct can serve as a

23

24

25  _____

26  [11]   Mr. Amiri's "law-abiding life" is confirmed by both the PSR and the many letters of support that we have submitted for the Court's review.  *See generally* Dkt. No. 43 (PSR) at Parts B and C (Defendant's Criminal History; Offender Characteristics); Ex. B (Nilufar Jami Letter); Exs. C-1 through C-51 (Letters of Support).

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1  ground for a downward *Booker* variance in support of his request for a non-custodial

2  sentence.[12]

3        Mr. Amiri is in Criminal History Category I.  *See* Dkt. No. 43 (PSR) at 4.

4  When a defendant, like Mr. Amiri, has no criminal record and is Criminal History

5  Category I, a court may consider that lack of a criminal history "as a mitigating

6  factor" in support of a downward variance.  *See United States v. Autery*, 555 F.3d

7  864, 874 (9th Cir. 2009) (supporting this variance factor and noting that defendants

8  with minor criminal histories can still fall within Criminal History Category I).

9        **2.**     **History of Assistance to the U.S. Government**

10        Upon graduation in 2006 from Herat University with a degree in Engineering,

11  Mr. Amiri began work with a U.S. construction company that had contracted with

12  the U.S. Army Corps of Engineers ("Corps").  After that company completed its

13  contract, the Corps hired Mr. Amiri.  He served the Corps in various capacities from

14  June 2006 until February 2010, including as an Interpreter/Translator, Quality

15  Assurance Representative, Project Manager, and Program Manager.  *See* Ex. F-3

16  (█████████████ Letter).

17        Among other things, the Corps has credited Mr. Amiri with explaining in the

18  local language difficult engineering concepts to the Afghan contracting work force.

19  *See id.*  Mr. Amiri also advised the Corps to change its standard contract language.

20  Instead of the Corps using its own resources to dismantle forward staging areas

21  upon the completion of a job, the Corps adopted Mr. Amiri's suggestion and

22  amended its standard contract to require its Afghan contractors to do that work.  *See*

23  Ex. F-1 (April 4, 2007 Certificate of Appreciation issued by █████████████,

24

25       [12]     A less-than-perfect Guidelines downward departure ground can be the

26  basis for a downward *Booker* variance.  *See, e.g., United States v. Chase*, 560 F.3d
828, 830-31 (8th Cir. 2009) (stating that "factors such as defendant's age, medical

27  condition, prior military service, family obligations, entrepreneurial spirit, etc., can
form the bases for a variance even though they would not justify a departure.")

28  (internal citations omitted).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Commanding Officer of the Afghanistan Engineer District of the Corps, noting that

2  Mr. Amiri greatly benefitted the Corps both financially and logistically).

3      Mr. Amiri also faced danger as a result of his work with the Corps.  In a May

4  2014 letter, recommending that Mr. Amiri be granted a SIV, his former Corps

5  supervisor, ███████, stated:

6      I believe that Saed Ismail Amiri is experiencing an ongoing serious

7      threat to himself as a consequence of his employment on behalf of

8      the U.S. Government.  Specifically, Mr. Amiri has conducted

9      numerous difficult and contentious negotiation on behalf of the

10     [Combined Security Transition Command - Afghanistan] and the US

11     Army Corp[s] of Engineers, [and] as such Mr. Amiri has developed

12     an individual profile directly associated with US Military operations

13     and has elevated his level of visibility particularly in the south, west

14     and east of Afghanistan where several individual[s] and companies

15     would wish him ill as a result [of] actions taken by him in support of

16     operation Enduring Freedom.  Based on my knowledge of the

17     dangerous condition in Afghanistan and information known to me, I

18     believe that these threats are serious and credible.

19  *See* Ex. F-4 (May 7, 2014 ███ Memorandum to the Chief of Mission, U.S.

20  Embassy, Kabul, Afghanistan).

21  ████████████████████████████████

22  ████████████████████████████████

23  ████████████████████████████████

24  ████████████████████████████████

25  ████████████████████████████████

26

27  13 _____

28  ████████████████████████████

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

13

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM



Mr. Amiri did these things not only because of his commitment to Afghanistan, but also to repay a debt of gratitude to the United States for ridding his country, at least for a period of time, of the Taliban.  Ridding the country of the Taliban gave Mr. Amiri the opportunity to go to college, to earn his engineering degree and, soon thereafter, to go to work for the Corps.  That experience led him to start his own, successful general construction company, ACI, which before the bid that is the subject of this case, pursued work in Afghanistan, Dubai, and other places in the world solely on U.S. government contracts.

This work with and for the U.S. government exemplifies Mr. Amiri's pro-social and productive nature, and provides a strong basis for a non-custodial probationary sentence.

### 3.   Personal Consequences of Mr. Amiri's Wrongdoing

Mr. Amiri then obtained counsel who, among things, took possession of his passports in a show of good faith to the government that Mr. Amiri would not flee during the course of pre-charging negotiations.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

14

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

In late October 2020, Mr. Amiri learned that his parents, who were living in Istanbul, Turkey, at the time, were complaining of flu-like symptoms after being visited by a person whom they later learned had COVID-19.  His parents were not able to speak either English or Turkish.  Mr. Amiri searched for and found a friend who took his parents to the hospital there, where they tested positive for COVID-19.  In November, his parents were both hospitalized, with his father in critical condition.

True to his word, Mr. Amiri did not flee, but, through his counsel, sought permission from government counsel to take back his passports from his counsel and to fly to see his critically ill father.  In exchange for his passports, Mr. Amiri's counsel offered to hold his then-pregnant wife's passport.  Government counsel, after receiving from Mr. Amiri's counsel verification of Mr. Amiri's parents' medical conditions, denied Mr. Amiri's request.

Later that November, Mr. Amiri's father died while in the Turkish hospital.  In the Islamic and Afghan tradition, the early days after the death of a loved one, especially a parent, are filled with important rites incumbent upon the eldest and, in this case, the only son.  Rather than flee, Mr. Amiri again sought permission from government counsel to take back his passports from his counsel and this time to fly to Afghanistan to participate in his father's burial and funeral rites and also to comfort his widowed mother.  Government counsel again denied that request.

██████████████████████████████████████████████████████
█████████████████████████████████████████████████  Yet that childhood and early adulthood trauma does not come close to the anguish he has felt from being unable to visit his father, as his father lay dying of COVID-19 in the hospital in Istanbul.  Nor does it begin to express the additional anguish he felt from being unable to attend his father's burial and funeral ceremony and his inability to be

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

15

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

present and comfort his widowed mother.  His absence from these emotional moments has compounded the shame Mr. Amiri feels for having committed his wrongful acts.

The recent and rapidly deteriorating situation in Afghanistan, including the reemergence of the Taliban, is also impacting Mr. Amiri.  He is well known in Afghanistan as an ally and supporter of the U.S. forces in Afghanistan, as well as of the rights of women and girls.  He cannot now, and perhaps ever, return to Afghanistan.  His mother, whom he has not seen since before the onset of the pandemic, had to flee her home in Herat three weeks ago and go into hiding in Kabul.  Fortunately, and after much effort through Mr. Amiri's contacts in the U.S. military and now-former Afghan government, Mr. Amiri's mother, cousin, and cousin's family were successfully evacuated from Kabul, Afghanistan, to Doha, Qatar.  The timeliness and importance of the escape and evacuation of his mother cannot be overstated.  Within days of her departure from the family home in Herat, Taliban fighters, who came to the home and questioned neighbors and household staff, stated that they knew of his mother's relationship to Mr. Amiri, as well as Mr. Amiri's work with U.S. forces.

Having been the owner of ACI and, for many years, responsible for bringing to ACI the U.S. government contracts that it performed, Mr. Amiri feels compelled to do whatever he can from afar to help evacuate former employees, contractors, and their family members—all of whom are considered by the Taliban to be collaborators with U.S. forces in Afghanistan and, thus, remain in grave danger if they stay in Afghanistan.  Mr. Amiri has spent the last three weeks trying to evacuate those who worked for ACI, a company known to the Taliban as having worked for the U.S. government.[14]  Taliban fighters have come to ACI's offices in

---

[14]    Mr. Amiri is familiar with the plight of being a refugee.  If the Court would allow, he stands ready to assist in the effort to support the Afghan refugees that are arriving daily in the United States.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Kabul multiple times in the last three weeks, seizing documents and weapons (used
2   by ACI security details), questioning ACI employees over their work with U.S.
3   forces, and even attempting to extort ACI employees over purported unpaid contract
4   obligations.

5           In addition to the issues with his parents and former ACI employees,
6   contractors and their families, this matter has impacted Mr. Amiri's safety and
7   standing in the community.  After news of Mr. Amiri's plea reached Afghanistan, he
8   received death threats from Afghanistan via email and internet postings.  *See, e.g.,*
9   Exs. D-1 through D-3 (Threat Emails).  These threats are based on the mistaken
10  impression from news reports that Mr. Amiri stole $100 million that was earmarked
11  to help in warn-torn Afghanistan's reconstruction.  This impression obviously is not
12  true (as the PSR, Plea Agreement, and Statement of Facts reflect), yet the threats
13  have added a sense of fear to Mr. Amiri's anxiety, shame, and remorse.  Moreover,
14  with the Taliban in power, Mr. Amiri's safety, should he attempt to return to
15  Afghanistan, is plainly in jeopardy from sources more sinister than anonymous
16  emails and internet postings.[15]  These circumstances should be a factor that supports
17  our request for a non-custodial probationary sentence.

18          **4.      Amenability to Supervision**

19          On December 1, 2020, only a week or so after the death of his father, Mr.
20  Amiri was charged by way of a criminal complaint.  An arrest warrant was issued
21  and, on December 2, 2020, Mr. Amiri traveled to Los Angeles to surrender to the
22  Court.  Then, on December 3, 2020, accompanied by counsel, he self-surrendered to
23  SIGAR agents at the Roybal Federal Building and was processed by the U.S.
24  Marshal's Service.  Mr. Amiri was released forthwith on an unsecured appearance

25  ───────────────
26          [15]     Mr. Amiri has learned that on August 15, 2021, a group of Taliban with
    covered faces entered his home in Herat and, after ransacking it while searching for
27  weapons, money, and documents, told the housekeeper there that "this is not a
    house, but an organization that works with foreigners."  The Taliban also
28  interrogated the housekeeper and neighbors about Mr. Amiri's whereabouts.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                              17
                    DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1   bond and placed on pretrial supervision, courtesy-supervised in the Eastern District

2   of California, where he lives.

3        Mr. Amiri has now been on pretrial release for almost nine months.  He has

4   been in complete compliance with all of the terms and conditions of his release.  His

5   amenability to non-custodial supervision is a factor that supports our request for a

6   sentence of probation with appropriate conditions.

7        **5.       Mr. Amiri's Charity and Good Works**

8        Mr. Amiri has a long history of engaging in substantial charitable endeavors

9   and good works.  One example of that was his establishment of and work with the

10  Liyan Amiri Foundation, a foundation named after ███████████████████████.

11  *See, e.g.,* Ex. C-2 (Faridon Azhand Letter); Ex. C-7 (Abdul Sami Sadiqi Letter); Ex.

12  C-11 (Ghulam Farooq Nadeem Letter); Ex. C-14 (Faridon Sarwari Letter); Ex. C-20

13  (Mansoor Salamyar Letter).  His foundation's support of education, particularly for

14  girls, and for improving the lives of Afghans living in poverty is especially

15  important in light of the threat to the rights of girls and apparent collapse of the

16  Afghan economy due to the recent return to power of the Taliban.

17       While his establishment of and work with the Liyan Amiri Foundation is

18  important, there are other, more personal and less institutional efforts of giving by

19  Mr. Amiri that are discussed in some of the letters of support attached to this

20  memorandum.  *See, e.g.,* Ex. C-1 (Rodaba Noori Letter regarding robotics team and

21  family assistance); Ex. C-25 (Abdul Basir Azimi Letter regarding medical expense

22  payments); Ex. C-5 (Ramin Sadat Letter regarding medical expense payments).

23  Invariably, they tell how Mr. Amiri, without any thought of recompense, provided

24  financial and emotional support to those most in need.

25       In sum, Mr. Amiri has worked to serve his community for several years—

26  both before and after the investigation in this case came to light.  His kindness and

27  generosity speak volumes about his gentle nature and good character.  This is

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  another factor that supports our request for a probationary sentence with appropriate

2  conditions.

### 6.    Mr. Amiri's Employment Record

4       Mr. Amiri has been employed since he graduated from college in

5  Afghanistan.  *See United States v. Jones*, 158 F.3d 492, 498 (10th Cir. 1998) (noting

6  that stable employment was a basis on which to conclude that the criminal conduct

7  was aberrational).

8       Aside from the conduct at issue in this case, which was limited and context-

9  specific, Mr. Amiri's uninterrupted employment record demonstrates that he has

10  been a stable, constructive, and productive contributor to society.  As such, his

11  employment record should also be a factor that supports our request for a non-

12  custodial probationary sentence.

### 7.    Mr. Amiri's Survival of Trauma and Abuse

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ██████████████████████████

20       At age 10, Mr. Amiri's family was able to return to their home in Herat,

21  Afghanistan, which was without electricity or running water.  Soon thereafter, the

22  Taliban took control, and ████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████

28  ██████████

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

19

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1  ██████████████████████████  Mr. Amiri excelled academically and was

2  eager to learn.  His motivation to succeed served him well, and he was offered an

3  excellent position upon graduation from college.  He has built highly successful

4  businesses, some of which have provided much-needed employment to his fellow

5  Afghans, while raising four children with his wife.  Of course, the fate of Mr.

6  Amiri's former employees and colleagues at ACI and that of this family and friends

7  are gravely in jeopardy, given the Taliban's abrupt takeover in Afghanistan.  This

8  factor too supports our request for a non-custodial probationary sentence.

9  **V.**     **THE PURPOSES OF SENTENCING**

10       The Court must ensure that Mr. Amiri's sentence meets certain purposes of

11  sentencing set forth in 18 U.S.C. § 3553(a)(2)(A)-(D).  In addition to considering

12  the nature and circumstances of the offense and the history and characteristics of the

13  defendant, a court is also required to consider the need for the sentenced imposed:

14            (A)     to reflect the seriousness of the offense, to promote the respect

15       for law, and to provide just punishment for the offense;

16            (B)     to provide adequate deterrence to criminal conduct;

17            (C)     to protect the public from further crimes of the defendant; and

18            (D)     to provide the defendant with the needed educational or

19       vocational training, medical care, or other correctional treatment in the most

20       effective manner.

21       18 U.S.C. § 3553(a)(2).

22  **A.**     **SERIOUSNESS OF OFFENSE, RESPECT FOR LAW, JUST**

23            **PUNISHMENT**

24       Given Mr. Amiri's acceptance of responsibility, personal history and

25  characteristics, low risk of recidivism, otherwise law-abiding life, and unique

26  circumstances of this case, a non-custodial probationary sentence and a high-end

27  fine of $55,000 reflects the seriousness of his offense, promotes respect for the law,

28  and provides just punishment.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3                          20

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1    A sentence of imprisonment is not necessary to account for the seriousness of

2  Mr. Amiri's offense, respect for the law, and just punishment.  There was no loss

3  occasioned by Mr. Amiri's wrongdoing.  Mr. Amiri has accepted responsibility for

4  his role in the scheme—not seeking to implicate or blame any of the ACI employees

5  and contractors that participated in the scheme to submit false information about

6  ACI's past performance to DABS.  Additionally, he has already suffered significant

7  consequences for his actions, including being deprived of the opportunity to visit

8  with his critically ill father before the latter passed away, the opportunity to comfort

9  his grieving mother, and the ability to perform his religious and society's traditional

10  obligations at his father's burial and at his father's funeral service (for which he has

11  suffered the obloquy and shame of his community due to his absence).  Then too, in

12  response to inaccurate media accounts about this matter, he has received death

13  threats.

14    Monetarily, Mr. Amiri gained nothing.  Instead, he lost ACI's $1.7 million

15  guarantee and ACI was debarred from receiving Afghan government contracts for a

16  period of 36 months.  Moreover, it is likely that Mr. Amiri and any entity with

17  which he is affiliated will soon be debarred from receiving U.S. government

18  contracts.[16]

19    While all of these things have occurred or likely will in the near future, Mr.

20  Amiri accepts these consequences as just punishment for his actions.  Moreover, as

21  a further demonstration of his contrition, ████████████████████████

22  ████████████████████████████████████████████████████

23

24

25

26  _____

27    [16]    Should he receive a notice of debarment, Mr. Amiri will not contest it.
Neither Mr. Amiri, who has sold his interest in ACI, nor any of the ACI employees

28  involved in the conduct underlying this matter continue to work for ACI.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

## B. **DETERRENCE**

Nothing suggests that Mr. Amiri is a danger or will commit crimes in the future. He is no longer in the business of contracting with the U.S. government. Mr. Amiri, as he has shown over the course of his life—aside from his conduct in the instant case—can contribute to society in a positive manner. Chastened by this experience, he is motivated never to be involved in the criminal justice system again. In short, Mr. Amiri has none of the factors that increase his risk of recidivism and he possesses all of the factors that decrease that risk. Specific deterrence, then, is not an issue.

Given the facts of this case, including that Mr. Amiri withdrew the bid before it was awarded, lost his company's $1.7 million bid deposit, and accepted responsibility for his conduct with a pre-indictment resolution, a sentence of probation with appropriate conditions, with a high-end fine of $55,000, will provide whatever general deterrence the government seeks to achieve, given that, with its financial component and other consequences, it is sufficiently punitive.

## C. **PROTECTION OF PUBLIC**

Mr. Amiri is not a danger to the public. Other than this case, he has no criminal history and has lived a law-abiding life. His wrongdoing ended over five years ago and was tied specifically to work at ACI and contracting with the U.S. government in Afghanistan.[17]

In sum, given Mr. Amiri's acceptance of responsibility in this no loss fraud case, and his personal history and characteristics, record of employment, assistance to the U.S. government, supportive family, low risk of recidivism, and law-abiding life aside from this case (including that the conduct ended over five years ago), a sentence of probation is warranted here, particularly with the requirements that Mr.

---

[17]    Mr. Amiri does not require additional correctional treatment, such as educational or vocational training or medical care. *See* 18 U.S.C. §3553(a)(2)(D).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

22

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

1 Amiri pay a substantial fine and abide by and complete appropriate conditions, as
2 set by the Court, while on probation.  Such a sentence reflects the seriousness of his
3 offense, while also promoting respect for the law and providing just punishment.

4 **VI.**     **AVAILABLE SENTENCES**

5      Section 3553(a)(3) requires consideration of the "kinds of sentences
6 available," including alternatives to imprisonment.  As previously stated, we request
7 that the Court apply a downward *Booker* variance, such that Mr. Amiri's score puts
8 him in Zone A of the Guidelines, and thereafter that the Court impose a sentence of
9 one year of probation, along with a fine and the special assessment.

10      The USPO has recommended a downward *Booker* variance to a Zone B
11 sentence of one year of probation with conditions that would require that Mr. Amiri
12 serve 8 months of his probation in the Location Monitoring Program with no
13 schedule restrictions.  The USPO also recommends the imposition of a fine at the
14 high-end of Zone C and payment of the requisite Special Assessment.

15      Each of these recommendations is consistent with the Guidelines' guidance
16 that, for non-violent first-time offenders in Zone A or B, such as Mr. Amiri, a court
17 "should consider imposing a sentence other than a sentence of imprisonment."
18 U.S.S.G. § 5C1.1, Application Note 4.[18]

19      Taking into account the need for just punishment, 18 U.S.C. § 3553(a)(2)(A),
20 and the need to protect the public, 18 U.S.C. § 3553(a)(2)(C), Mr. Amiri
21 respectfully requests that this Court sentence him to a non-custodial probationary
22 sentence with appropriate conditions.

---

26     [18]     Absent a downward *Booker* variance, Mr. Amiri falls in Zone C of the
Guidelines, at 12-18 months.  In Zone C, a court may impose a "split sentence,"
27 which consists of a combination of community confinement or home detention and
28 imprisonment.  U.S.S.G. § 5C1.1, Application Note 5(B).

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3
23
DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

## VII.   <u>NEED TO AVOID UNWARRANTED DISPARITIES</u>

The Court must, when determining a sentence, consider the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).

Mr. Amiri does not have co-defendants.  None of the seven co-conspirators identified in the Information and Statement of Facts was charged.

In addition, Mr. Amiri has met or was prepared to meet all of the requirements to qualify for the 2-level downward "COVID variance" offered to many defendants in this District.  As noted above, we do not know this Court's practice with respect to applying the "COVID variance."  Nevertheless, we understand that the 2-level downward "COVID variance" has been applied in many cases in this District, and thus to avoid any unwarranted disparities among similarly situated defendants, the Court should apply it here.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603310894.3

24

DEFENDANT SAED ISMAIL AMIRI'S SENTENCING MEMORANDUM

## VIII.  **<u>CONCLUSION</u>**

In sum, for the reasons set forth above, we respectfully request that the Court impose a sentence of a one-year term of probation with appropriate conditions, a fine in the amount of $55,000, and a Special Assessment of $100.


DATED:  August 31, 2021          KENDALL BRILL & KELLY LLP


By:  ___/s/_____
        Jeffrey H. Rutherford
        *Attorneys for Defendant*
        *Saed Ismail Amiri*


DATED:  August 31, 2021          NICHOLS LIU, LLP


By:  ___/s/_____
        Richard L. Beizer
        *Attorneys for Defendant*
        *Saed Ismail Amiri*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067